903 So.2d 580 (2005)
STATE of Louisiana, Appellee,
v.
Jimmy Ray WHITE, Appellant.
No. 39,681-KA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*582 Louisiana Appellate Project by Carey J. Ellis, III, Michelle F. Tabarrok-Keeling, for Appellant.
Paul J. Carmouche, District Attorney, Sean D. Miller, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before BROWN, PEATROSS & DREW, JJ.
PEATROSS, J.
Defendant, Jimmy Ray White, was convicted of possession of cocaine, found to be a third-felony habitual offender and sentenced to serve five years imprisonment without benefits and with credit for time served. Defendant now appeals. For the reasons stated herein, Defendant's conviction is affirmed and his sentence is amended and, as amended, is affirmed.

FACTS
On March 8, 2001, Sergeant Brian Strange of the Shreveport Police Department was on duty with other officers, including Detective Derrick Brown and Agent Brian Wheeler, at a traffic stop at the intersection of Arkansas and Milam Streets in Shreveport. Their attention was drawn to a school bus, which locked its brakes because of the wet roadway when a silver-colored Blazer went speeding by and made a southbound turn onto Arkansas Street. The Blazer slid off the roadway and was traveling in a very erratic and reckless manner. The Blazer traveled out of the officers' sight, but returned traveling northbound on Arkansas Street, at which time Sergeant Strange effected a traffic stop of the vehicle.
After stopping the vehicle, Sergeant Strange went to the driver's side of the Blazer and Agent Wheeler went to the passenger's side. Defendant was the driver of the Blazer and Sergeant Strange requested his driver's license, to which Defendant responded that he did not have one. According to Sergeant Strange, Defendant had "real wild looking eyes" and *583 his pupils were "fixed." Defendant's appearance was similar to someone under the influence of cocaine. Sergeant Strange, a 16-year veteran of the Shreveport Police Department, testified that he had encountered numerous persons under the influence of cocaine; and, in his opinion, Defendant's eyes at the time of the stop were similar to a person who was under the influence of cocaine, and he suspected as much.
At this point, Sergeant Strange testified that Defendant was being held for traffic infractions. Fearing, however, that Defendant would attempt to flee in the vehicle, Sergeant Strange asked him to put the vehicle in park, turn off the engine and step out of the vehicle and Defendant complied. Sergeant Strange then asked Defendant to put his hands on the car for a patdown to ensure the officers' safety and Defendant again complied. Sergeant Strange further related:
... As I started the patdown I got to Mr. White's front right pants pocket and felt a bulge. Upon feeling this bulge I noted it to be questionable. I asked him, Mr. White, what that bulge was and he said he didn't know. I then asked for consent to go into his pocket and retrieve that item. It was rounded and felt like bubble gum, if you will. But it was questionable in my mind at that point. I asked him for consent, he gave it. I then reasked (sic) him to make sure that he understood the question. He then again gave consent to go into the pocket, at which time I did....
The object that Sergeant Strange retrieved from Defendant's pocket was a large chunk of suspected rock cocaine, along with two smaller rocks. Sergeant Strange did not give any Miranda warnings before he requested permission to go into Defendant's pocket; however, Detective Brown was present during the stop and testified that Sergeant Strange twice requested and received permission from Defendant to enter his pocket. Sergeant Strange also stated that, when he felt the object in Defendant's pocket, he was not concerned for his personal safety from that object.
After obtaining Defendant's name, it was discovered that there were three outstanding city bench warrants for his arrest. Two traffic tickets were issued to Defendant, one for not having a driver's license and the other for careless and reckless operation of a vehicle.
Defendant was initially charged by bill of information with second offense possession of a Schedule II controlled dangerous substance, cocaine. Defendant filed a motion to suppress as evidence the cocaine seized as a result of consent following a patdown search. The above-related facts were presented at the hearing on the motion to suppress. The trial court denied the motion to suppress, finding that the officers had lawful cause to make the traffic stop, that Sergeant Strange had cause to request that Defendant exit the vehicle and had the right to pat down or search Defendant for weapons. Based on Defendant's consent to the search of his pocket, the trial court found the search to be valid. It further noted that, once Defendant was identified as having outstanding arrest warrants, the discovery of the suspected cocaine would have been inevitable on the search incident to his arrest or on the inventory search at the jail, thereby justifying the search under the inevitable discovery rule.
Defendant was tried by a judge on the amended charge of possession of cocaine, after which he was found guilty as charged. Motions for post-verdict judgment of acquittal were filed on behalf of Defendant and by Defendant pro se. Defendant was charged and adjudicated as a *584 third-felony offender. After various other procedural steps, the post-verdict judgment of acquittal motions were denied and Defendant was ultimately sentenced to the agreed term of five years at hard labor, with credit for time served. The sentence was initially imposed without probation, parole or suspension of sentence. Defendant was additionally sentenced to pay court costs, or in default thereof, to serve ten days in the parish jail. After a bench conference, the trial court noted that the five-year sentence is imposed without benefit of probation or suspension of sentence, but that Defendant does have parole eligibility. The trial court further noted that Defendant does not have good time credit under the multiple offender provision. This appeal ensued.

DISCUSSION
Defendant assigns the following as errors on appeal (verbatim):
1. The Trial Court committed error by failing to grant Defendant's Motion to Suppress evidence.
2. Defendant should receive all credit for time served in connection with this matter.

Assignment of Error Number 1: Motion to Suppress
La. C. Cr. P. art. 703, regarding a motion to suppress evidence, provides in pertinent part:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
* * *
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion, but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550; State v. Williams, 98-1006 (La. App. 5th Cir.3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
In the case sub judice, Defendant acknowledges that the original stop was lawful, but questions whether Sergeant Strange was justified in conducting a weapons search which led to the seizure of the crack cocaine. Defendant further argues that the pat down was unwarranted since he was stopped only for traffic violations. He asserts that the only indicator of "abnormality" was his "wild eyes." He emphasizes that Sergeant Strange was not alarmed when he felt the object in Defendant's pocket and that the search did not qualify as a "plain feel" exception to the warrant requirement because it was immediately apparent to Sergeant Strange that the object was not a dangerous weapon. Defendant further argues that his consent to the search was not valid and he was not advised of his right to refuse consent.
*585 The State responds stating that the facts in the instant case were sufficient to support the trial court's determination that the driver's behavior and wild-eyed appearance posed a safety concern for Sergeant Strange. It notes that the trial court's credibility determinations should be accorded great weight. In addition, the State argues that the evidence did not support Defendant's suggestion that the consent was involuntary, noting consent is an exception to the warrant requirement and that no evidence of coercion or duress was adduced. Finally, the State contends that the trial court was correct in observing that Defendant's outstanding bench warrants would have led to the inevitable discovery of the cocaine.
As previously stated, Defendant does not challenge the propriety of the initial stop. We agree that the initial stop was justified. Since Sergeant Strange observed Defendant driving the Blazer in a careless and reckless manner, he was justified in effecting a traffic stop of the vehicle. We will now address the ensuing pat down, seizure of the cocaine and denial of the motion to suppress this evidence.
La. C. Cr. P. art. 215.1, regarding temporary questioning of persons in public places, frisk and search for weapons, provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.
A frisk is a brief pat down of the subject's outer clothing in order to protect the officer. The object of a frisk is to determine whether the officer is in danger from one armed with a dangerous weapon. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Cooper, 36,472 (La.App. 2d Cir.10/23/02), 830 So.2d 440. After a lawful stop, an officer can establish a "substantial possibility" of danger by pointing to particular facts which support such a reasonable inference. State v. Bolden, 380 So.2d 40 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). See also State v. Cooper, supra.
After reviewing the record, and specifically Sergeant Strange's testimony, we conclude the pat down frisk of Defendant was justified. Sergeant Strange testified that Defendant was "wild-eyed" and that he had the appearance of someone on *586 cocaine. The officer was concerned for his safety and that of other drivers in the vicinity. We find these to be sufficiently particular facts from which he reasonably inferred the substantial possibility that Defendant was armed and dangerous. Thus, the circumstances set forth in the record support the conclusion that the pat down was justified.
In addition, we find that Defendant's consent to search his pocket was freely and voluntarily given, thereby justifying Sergeant Strange's search of that pocket. It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App. 2d Cir.5/8/96), 674 So.2d 1082. Oral consent to a search is valid. Crews, Id. A consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584 (La.1981); State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748 (La. 1986), cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. Necessarily, voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case, which determination is to be given great weight upon appeal because of that court's opportunity to observe witnesses and assess credibility. State v. Edwards, 434 So.2d 395 (La.1983); State v. Paggett, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072.
The record in this case shows that Defendant gave his oral voluntary consent to the search of his pocket, and that resulted in the discovery and confiscation of crack cocaine. Sergeant Strange's uncontroverted testimony at the motion to suppress hearing that he twice requested Defendant's permission, and twice received permission, to search Defendant's pocket was corroborated by the testimony of Detective Brown. We find, therefore, that the State met its burden of proving that Defendant's consent, a recognized exception to the warrant requirement, was freely and voluntarily given under the facts and circumstances of this case.
We find no error in the trial court's conclusion that the inevitable discovery rule would have operated in this case to allow the admission of the cocaine into evidence. This rule provides that, when the evidence in question would inevitably have been discovered without reference to the alleged police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible. State v. Drake, 31,528 (La.App. 2d Cir.1/20/99), 733 So.2d 33, writ denied, 99-1060 (La.9/24/99), 747 So.2d 1117. We find that, because of Defendant's outstanding warrants, the crack cocaine would have inevitably been discovered without reference to any alleged police error or misconduct. The evidence, therefore, even if revealed through an invalid search, would have been admissible under the inevitable discovery rule.
In summary, the initial traffic stop was valid, as was the ensuing pat down, search of Defendant's pocket and seizure of the crack cocaine. We find, therefore, that the trial court properly denied Defendant's motion to suppress.

Assignment of error number 2: Credit for time served/good time
First, we note that both the district court minutes and the transcript of the *587 resentencing reveal that Defendant was given credit for time served. In any event, credit for time served is self-operating under La.C.Cr.P. art. 880; and, therefore, we need not address this argument. Next, regarding Defendant's argument concerning good time, we simply note that eligibility for good time is governed by La. R.S. 15:571.3 C, which is directed to the Department of Corrections exclusively. The sentencing judge has no role in the matter of good time credit-the control of good time in this case is, as mentioned, with the Department of Corrections. We need not address this issue on appeal and, therefore, find this assignment of error to be without merit.
Finally, we note that the trial court erred in ordering Defendant to serve 10 days of jail time if he defaulted on the payment of court costs. An indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs or restitution. State v. Mack, 30,832 (La. App. 2d Cir.6/24/98), 715 So.2d 126; State v. Hughes, 587 So.2d 31 (La.App. 2d Cir. 1991), writ denied, 590 So.2d 1197 (La. 1992).
It can be concluded from the record that Defendant was and is indigent. He was represented at trial by the Indigent Defender Office and on appeal by the Louisiana Appellate Project. See State v. Williams, 484 So.2d 662 (La.1986); State v. Kerrigan, 27,846 (La.App. 2d Cir.4/3/96), 671 So.2d 1242; State v. Conway, 604 So.2d 205 (La.App. 2d Cir.1992), writ denied, 610 So.2d 797 (La.1993). Defendant's sentence is, therefore, amended to delete the portion that provides for a jail term in the event of default of payment of court costs.

CONCLUSION
For the foregoing reasons, Defendant's, Jimmy Ray White, conviction is affirmed and his sentence is hereby amended to delete the imposition of jail time in the event of Defendant's default on the payment of court costs.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.
BROWN, C.J., concurs with written reasons.
DREW, J., concurs with written reasons.
BROWN, C.J., Concurring,
The officers saw defendant driving his car in a careless and reckless manner. This stop was not for investigatory purposes but was based upon probable cause of a crime. See Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Defendant also did not have a driver's license, another violation of law. Neither the strictures of Terry v. Ohio nor consent are applicable to a search incident to a lawful arrest. U.S. v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
In Robinson, 414 U.S. at 235, 94 S.Ct. 467, the court stated:
A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable *588 intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a `reasonable' search under that Amendment.
...
Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Jenks did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as `fruits, instrumentalities, or contraband' probative of criminal conduct.
In the present case, instead of a "crumpled package of cigarettes," the officer felt a "questionable" bulge. Sgt. Strange was entitled to inspect the item and seize it as contraband probative of criminal conduct.
DREW, J., concurring.
While I agree with the results in this opinion, I make these few points.
All that is required for a law officer to stop (detain) a person is the officer's reasonable suspicion of criminal activity,[1] whether the proscribed conduct is found in Title 32, Title 40, Title 56, Title 14, or any other criminal statute or ordinance. In order to actually issue a traffic citation or make an arrest, however, the officer must have probable cause. Here, the officers initially witnessed erratic driving, which could have been charged under La. R.S. 32:58 (Careless Operation) or La. R.S. 14:99 (Reckless Operation). Even though the officers saw the aberrant operation of the vehicle and clearly had probable cause, all that was actually required for them to have stopped the vehicle was the lesser burden of reasonable suspicion of criminal activity.[2]
The defendant's reckless driving and bizarre-looking eyes provided the officers adequate reasonable suspicion of danger by which to remove any and all occupants of the vehicle for safety. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); State v. Landry, 588 So. 2d 345 (La.1991); Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). The main purpose of getting folks out of their car is to keep their hands visible so as to prevent injury from their use of a hidden weapon.
All that was legally required for the officer to have conducted a valid frisk of *589 the defendant's person for weapons (as opposed to a search for evidence) was a continuing reasonable suspicion of danger. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
At this point, these officers were already presented with numerous violations of the law, including outstanding city court bench warrants, for any of which they could have made a valid custodial arrest of the defendant. Had they made an arrest at this point, the peace officers could have searched (for weapons or evidence) White's person, as well as his wingspan (or lunge space), including the passenger compartment of the vehicle, as a contemporaneous incident of the lawful custodial arrest. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); U.S. v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); and Thornton v. U.S., 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). In fact, even if White had been arrested, handcuffed, and seated in a patrol car at the time of the actual search incident to arrest ("S.I.T.A."), the passenger compartment could also have been searched incident to arrest. See Thornton, supra. For a different result 23 years ago, see discussion in State v. Hernandez, 410 So.2d 1381 (La.1982).
This is not a search incident to arrest case, however, as the defendant was not yet arrested at the moment the contraband was seized. Upon patting the items that felt like bubble gum,[3] Sergeant Strange received White's free and voluntary consent (twice) to search his pocket, as opposed to frisk for weapons.
The proper analysis, then, under the facts of this case, simply points to this chronology:
 a valid stop, pursuant to reasonable suspicion of criminal activity;
 a valid required exit of the car, due to the officer's reasonable suspicion of danger;
 a valid frisk for weapons, allowed by a continuing reasonable suspicion of danger; and
 a free and voluntary consent to search.
Neither the invocation of S.I.T.A. nor the inevitable discovery rule is necessary for admissibility purposes under the instant facts. The entirety of the interaction between the defendant and the officer was conducted reasonably, legally, and appropriately.
In numerous cases through the years, various courts have confused the issue as to what burdens apply before law officers may take certain actions. Consider these overlapping burdens sliced thin by our jurisprudence:
 substantial possibility;
 reasonable concern;
 reasonable belief;
 reasonable suspicion;
 probable cause;
 reasonable grounds;
 reasonable possibility;
 reasonable concern;
 reasonable probability;
 reasonable cause; and
 reasonable cause to believe.
*590 All these nuances make this stuff hard to understand, hard to teach, hard to learn, and hard to apply fairly on the street. If peace officers understand the law, then fewer rights of the citizenry are infringed upon. In the criminal arena, I humbly suggest that clarity will result if judges in search and seizure cases limit themselves to using the terms "reasonable suspicion" and "probable cause."
NOTES
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002). Unfortunately, see confusing characterization of "probable cause" being required for a traffic stop in Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), which is the landmark case authorizing a valid pretextual stop. In fact, the Whren officers DID have probable cause, as they observed the traffic infraction, yet reasonable suspicion technically would have been sufficient for the stop.
[2] The reality is that police almost never make traffic stops unless they themselves observe the infraction, by which observation they have developed at least probable cause. Put another way, if an officer only had reasonable suspicion of the violation of a traffic offense, the officer could make the stop, but only legally issue the citation by quickly gaining additional evidence of the infraction, after the stop. Since it is doubtful that any speeder would immediately confess on the side of the road, traffic stops are almost universally made upon probable cause.
[3] Had the officer removed the crack cocaine at this point without asking permission, then an inquiry would have to be made as to whether the officer had enough knowledge, training, and experience to have developed probable cause from his brief pat of the lumps, together, of course, with his other observations. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Here, the officer made the better decision and asked permission, which was granted, twice.