DREW, J.
LWe granted a writ application by the defendant, Jennifer L. Cox, concerning the trial court’s denial of her motion to suppress. After obtaining the record from the trial court, we placed the matter on the appellate docket for argument and decision.
Ms. Cox complains:
• that her stop for speeding was illegal, because the state trooper lacked jurisdiction, under these facts, to enforce a parish ordinance on this particular road, owned by Bossier Parish, not the state; and
• in consequence thereof, all evidence of her impairment flowing from the traffic stop should be suppressed.
We affirm the judgment of the trial court, which denied defendant’s motion to suppress.
FACTS AND PROCEDURAL POSTURE
On July 22, 2006, sometime after 2:00 a.m. on a weekend night, Cox drove her vehicle on Kingston Road, a parish road in Bossier Parish. A Louisiana State Trooper stopped her for speeding 53 mph in a 45 mph speed zone, in violation of a parish ordinance. Though driving over the parish posted speed limit, she was still operating at less than the presumptive state highway speed limit of 55 mph, established by La. R.S. 32:61.
The trooper immediately observed signs of impairment. When Cox refused to submit to tests to determine whether she was intoxicated, the trooper arrested Cox for speeding in violation of La. R.S. 32:63[1] and DWI in violation of La. R.S. 14:98.
^Defendant filed a motion to quash the speeding charge, asserting that La. R.S. 32:63 only allows the state to reduce a speed limit lower than 55 mph on a two-lane highway after the Department of Transportation and Development (“DOTD”) has conducted a survey and determined that a slower speed is appropriate. Such a survey was not done in this situation.
The trial court quashed prosecution of the speeding charge[2] under the state statute, since she was not violating La. R.S. 32:61-64. Since defendant maintains that the initial stop was illegal, she urges that all observations of her alleged intoxication were the product of an illegal detention and should be suppressed, as fruit of the poisonous tree. Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Facially at issue here is the authority of the Louisiana State Police (“LSP”) to enforce a local (parish) traffic ordinance on a road owned by the parish, for an act that does not violate state law. The ultimate question is the legality of the initial stop for speeding by the trooper, since everything else flows from that stop. If the *1082 stop is lawful, then the trial court properly denied the motion to suppress all evidence accruing after the stop.
In denying the motion to suppress, the trial court stated, “[T]his Court believes that once the state troopers were given the authority to act over the highways that they were able to enforce the speed limits on any of the highways in the State of Louisiana.”
J^PROSE CUTION VIEW OF DISPUTE AND LEGAL AUTHORITIES
The prosecution argues that the State Police have authority to enforce violations of state DWI laws on any highway in the state, citing La. R.S. 32:2, which grants law enforcement authority to the DOTD to “supervise and regulate all traffic on all highways within the state highway system and shall have the authority in its discretion to supervise and regulate all traffic on all highways within this state[.]”
The State further cites La. R.S. 32:3, which sets forth the authority of the Department of Public Safety and Corrections. It provides in part:
A. The Department of Public Safety and Corrections shall enforce the provisions of this Chapter and the commissioner’s regulations adopted pursuant thereto on all highways of this state within its jurisdiction and shall exercise such other power and authority as is specifically set forth in this Chapter or other laws of this state.
The prosecution broadly construes “all highways of this state within its jurisdiction” so as to validate the stop in question, further arguing that the authority of the State Police is statewide and not limited by local ordinances unless specifically adopted pursuant to La. R.S. 32:41, the pertinent part of which is set forth below.
La. R.S. 32:21, regarding uniform application, provides:
The provisions of this Chapter and the regulations of the department adopted pursuant thereto shall govern the operation of vehicles and pedestrians upon all highways within this state and other areas specifically set forth; provided, however, that local authorities may adopt local traffic regulations in accordance with the provisions of R.S. 32:41, 32:42.
La. R.S. 32:41 provides for the power of local municipal authorities as follows, in pertinent part:
14A. Except as otherwise provided by law, this Chapter shall not be deemed to prevent local municipal authorities, with respect to highways other than state maintained highways within their corporate limits, from adopting ordinances:
* * *
(9) Establishing speed limits and speed zones, provided that no speed shall be permitted which is in excess of the specific maximum speed limits established by this Chapter;
* * *
(13) Creating additional regulations controlling traffic upon nonstate maintained highways within their corporate limits under their general police power so long as such regulations do not modify, or conflict with, the provisions of this Chapter or regulations of the department and the commissioner adopted pursuant hereto.
[[Image here]]
C. Local municipal authorities also may adopt ordinances regulating traffic on state maintained highways within their corporate limits, so long as such ordinances do not establish regulations different from, or in addition to, the provisions of this Chapter and the regu- *1083 Iations of the department and the commissioner adopted pursuant thereto....
La. R.S. 32:42(A) provides:
A. Local parish authorities ... shall, with respect to highways other than state maintained highways and with respect to public roads within their territorial limits, but outside corporate limits of any municipality therein, have henceforth, power to adopt ordinances regulating the matters enumerated in R.S. 32:41.
La. R.S. 33:1236, regarding powers of parish governing authorities, provides a limited backdrop for this dispute as it states in pertinent part:
(28) To enact ordinances regulating the traffic on all public roads outside of incorporated municipalities and within recognized subdivisions other than state constructed and maintained streets and highways, including but not by way of limitation the right to establish speed limits and speed zones, to regulate the parking of vehicles, to establish rules and regulations for the movement of traffic, including the designation of one-way streets, and for such other similar rules and regulations; provided that insofar as such ordinances may affect state highways they shall not be in conflict with any rules and regulations established by the legislature for the use of highways forming part of the state highway system.
|RThe prosecution contends that local authorities do not have authority to limit the law enforcement power of the State Police as to La. R.S. 14:98, the DWI law.
DEFENSE VIEW OF DISPUTE AND LEGAL AUTHORITIES
Defendant argues that:
• the LSP may only be granted authority to enforce laws passed by the legislature and do not have the authority to enforce parish ordinances;
• the history of the formation of the present-day Louisiana State Police buttresses this argument;[3]
• previous versions of La. R.S. 40:1379 also bolster her view;[4]
• previous versions of La. R.S. 40:1387 arguably support her case;[5] and
• the conclusion is clear that even though the LSP has the authority to enforce all legislatively enacted criminal laws everywhere in the state, such powers are restrained in certain situations and the authority to control the State Police is retained by local officials.
La. R.S. 40:1379 sets forth the duties and powers of state police employees as follows:
A. The police employees of the division shall prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, keep the peace and good order in the state in the enforcement of the state’s police powers, and perform any other related duties imposed upon them by the legislature. *1084 B. Police employees of the division are peace officers and, any provision of the law to the contrary notwithstanding, except h;R.S. 40:1386,[6] they have, in any part of the state, the same' powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and police officers have in their respective jurisdictions. They have all the immunities and matters of defense now available or hereafter made available to sheriffs, constables, and any police officers in any suit brought against them in consequence of acts done in the course of their employment.
The defendant strictly interprets “enforce the criminal and traffic laws of this state” to restrict LSP to enforcement of only state legislative statutes.
There is little helpful jurisprudence, though Cox cites two older cases which arguably recognize the limitations of powers of state enforcement agencies. See State v. Swain, 292 So.2d 495 (La.1974), and State v. Longlois, 374 So.2d 1208 (La.1979), which arguably hold that neither the LSP nor any other state law enforcement agency has full and unbridled authority to enforce all laws which may exist in a particular geographical location (ie., the boundaries of the state of Louisiana), much less ordinances passed by political subdivisions of the state.
La. R.S. 40:1388, regarding contracts with municipalities for police protection, is cited by Cox, as follows:
The mayor or chief police officer of any municipality and the sheriff of any parish within this state may contract with the department, acting on behalf of the state, for the regular assignment of an agreed number of employees of the division of state police to the municipality or parish, as the case may be, so as to provide police protection therein and to enforce both state laws and local ordinances, in consideration of the payment by the municipality, parish, or other unit of government of a sum agreed upon by them and the department. The department may enter into such a contract or contracts or may refuse to do so for the good of the service.
|7Any police employee of the division so assigned shall continue to have all the powers and duties granted and bestowed in this Sub-part but he shall not be subject to the restrictions contained in R.S. 40:1386 and 40:1387 with reference to the municipality to which he has been assigned.
Cox argues that:
• the above exception would be unnecessary if the State Police already had the authority to enforce local ordinances;
• the Home Rule Charter provisions of the Louisiana Constitution preclude the state from unduly usurping power from political subdivisions, which would upset a political subdivision’s checks and balances of power between the three branches of government;
• La. R.S. 32:41(9) allows parishes to establish speed limits and speed zones as long as the maximum speed limit doesn’t exceed that allowed in Title 32; and
• the local ordinance in the case sub judice, under these facts, must only be enforced by local, not state, peace officers.
The defendant’s narrow reading of La. R.S. 32:3 would grant the state police gen *1085 eral authority to enforce traffic laws only on state highways.[7]
DISCUSSION
The law pertinent to appellate review of a suppression motion is well settled. La. C. Cr. P. art. 703, regarding a motion to suppress evidence, provides in pertinent parts:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
[[Image here]]
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
|SA trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. White, 39,681 (La.App. 2d Cir.5/11/05), 903 So.2d 580; State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
Our summary appreciation of each side’s position is as follows:
• Cox presents strictly-construed statutory interpretations to bolster her position that the LSP is without authority to stop a speeder who is violating a parish speeding ordinance, if that person at the same time is not violating statutory speeding laws enacted by the legislature. She further reasons that if the stop was unlawful, then the subsequent observations of her alleged intoxication, being tainted, must be suppressed. (See Wong Sun, supra.)
• The prosecutor wraps his argument around a broader statutory construction, together with the crucial public policy of enforcing DWI laws, to keep the roads safe, and to prevent safe havens for drunk drivers.
Two vital points stand out here.
First, as to the propriety of this particular stop, the issue is to determine whether or not the actions of the officer, in making the stop, were “objectively reasonable.” Stated another way, actions of law officers, for more than a decade, have been judged against the standard of “objective reasonableness.”
Consider the following cases:
• Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)—upheld a pretextual traffic stop in a situation where the officers had another agenda, other than the observed traffic infraction, finding the stop to be objectively reasonable;
• State v. Dumas, 2000-0862 (La.5/4/01), 786 So.2d 80—A Shreveport Police Officer frisked an acquaintance, even though the officer personally felt no fear. The contraband discovered was allowed into evidence, because it was objectively reasonable for an |9officer to have frisked Dumas at that time and in that place, even though this particular officer expressed no reasonable suspicion of danger relative to this particular detainee;
*1086 • U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002)—A traffic stop by an LSP trooper was upheld, based on his developing reasonable suspicion that an SUV was in violation of La. R.S. 32:327(C) because of a flashing light from the rearview mirror, later held not to be a traffic violation (the stop was held objectively reasonable, but the evidence was suppressed on other grounds);
• State v. Strange, 2004-0273 (La.5/14/04), 876 So.2d 39—Another stop by an LSP trooper was upheld, even though the stop was predicated on the mistaken belief that this Texas driver was violating the law by driving in Louisiana with both temporary and permanent plates, which is entirely legal under Texas law;
• Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)—An officer made an arrest for one crime, lacking probable cause by which to justify the arrest. Even so, the arrest was objectively reasonable, and not civilly actionable, because there existed probable cause to arrest for another (not closely related) charge;
• State v. Kelley, 2005-1905 (La.7/10/06), 934 So.2d 51—Louisiana officer, mistakenly thinking he has developed probable cause for driving under suspension (La. R.S. 32:415), orders defendant out of the car, intending to effectuate the arrest, whereupon he spies drugs in plain view on the seat of the car. The evidence was allowed because it was objectively reasonable for the officer to require a vehicular occupant out of any vehicle, for officer safety,[8] and thus the evidence would have been seen anyway; and
• State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136—Even though the officer categorized his search of a passenger compartment as being pursuant to an inventory, the court held itself not bound by the officer’s categorization, and allowed the items secured into evidence, as being the product of an objectively reasonable search incident to an arrest.
|inWe find the above seven cases quite helpful in arriving at our conclusion that the officer’s stop was objectively reasonable, legitimizing the usage of the trooper’s observations after the vehicular traffic stop.
Second, even were we to reach the conclusion that the initial stop was illegal, which we do not, we would then be faced with a question to ponder as to whether suppression under these facts would be appropriate: ie., whether suppression would help deter police misconduct, the rationale of the state exclusionary rule, and one of the primary considerations for Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081(1961).
As in Hudson v. Michigan, — U.S. -, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), the answer is “No.” In Hudson, the Michigan law officers admittedly violated the general knock and announce rule by entering the premises three seconds after the knock, as opposed to the 15 to 20 seconds required by U.S. v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). Notwithstanding this mistake, the physical evidence seized pursuant to the execution of the search warrant was not suppressed. An interesting comment is found in that majority opinion: “Suppression of evidence, however, has always been *1087 our last resort, not our first impulse.” Hudson, supra, 126 S.Ct. at 2163.
Buttressing the U.S. Supreme Court’s decision not to suppress the physical evidence was the court’s recognition of three realities of today that did not exist in 1961, when Mapp was rendered:
• aggressive internal affairs components of police forces;
• more professional law officers, due to increased training; and
In* civil rights lawsuits.
We find three other cases helpful in our inquiry into the Cox stop:
• Michigan v. Tucker, 417 U.S. 483, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974):
“The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the right of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.”
• U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the original “good faith” case, in favor of law enforcement.[9]
• U.S. v. Lopez-Valdez, 178 F.3d 282, 289 (5th Cir.1999):
“Generally, the fruits of illegal searches and seizures are inadmissible under the exclusionary rule_But the good-faith exception to the exclusionary rule allows the admission of the fruits of some illegal stops.”
Internal citations omitted.
This record contains not a whiff of bad faith. The trooper was doing his job, trying to keep the roads safe.
We find that state troopers are authorized to enforce traffic laws governing the operation of vehicles and pedestrians upon all public highways located within the state of Louisiana. See La. R.S. 32:21.
We accordingly disagree with defendant’s narrow interpretation of the powers of the Louisiana State Police to enforce local government’s traffic laws, but arriving at that conclusion is unnecessary for this court to Invalidate this traffic stop. This particular stop was legal because this particular trooper, on these particular facts, was objectively reasonable in making this traffic stop. Ms. Cox was speeding 53 mph on a road marked with a 45 mph speed limit sign, and the stop was good. Further, suppression of the trooper’s observations of impairment, immediately after the stop, would satisfy no rational societal objective.
DECREE
We affirm the trial court’s denial of the motion to suppress. This matter is remanded to the trial court for further proceedings.
AFFIRMED AND REMANDED.
WILLIAMS, J., dissents with written reasons.

. Technical observation about the speeding arrest: La. R.S. 32:57(C) requires an officer to accept a written promise to appear, unless the speeding is alleged to be 15 mph or more over the speed limit, as per La. R.S. 32:57(E). This arrest for speeding, however, was in conjunction with an arrest for DWI, so Cox was arrested on both charges, which is apparently a common practice in this state.

. Our understanding of the ruling on the motion to quash is that the offense could not be prosecuted under the state statute, but could have been re-filed and prosecuted under the Bossier Parish ordinance. The record is silent as to whether this was done.

. The LSP was formed in 1936 when the Louisiana Highway Commission (which had authority over the traffic laws passed by the state) and the Bureau of Criminal Identification (which had authority over state criminal laws) were combined.

. Previous versions of the statute gave the State Police specific powers to enforce criminal and traffic laws of the state, but limited the circumstances in which the State Police could usurp the powers and control of local officials.

.This statute was amended in 1974 to empower State Police Officers to act within the city limits of a municipality which has a police force, but only when the chief law enforcement official decided that an emergency existed.

. La. R.S. 40:1386 concerns use of the LSP in industrial disputes and has no application to this case.

. Meaning, in her opinion, highways owned by the state, rather than all highways physically located within the state.

. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); State v. Landry, 588 So.2d 345 (La.1991); and Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

. Leon was framed in the context of an officer securing a search warrant. Even with a technical glitch, the evidence was allowed, because the officer was in "good faith.” Leon is now often cited anytime an officer makes a mistake; consequently, its ambit has expanded through the years.