Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,315-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

LARRY DELANTA GARDNER, JR.          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 366,152

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: G. Paul Marx


JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

JOHN CLAUDE PHILLIPS
CHRISTOPHER BOWMAN
Assistant District Attorneys

* * * * *


Before STONE, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Ramona Emanuel, Judge, presiding. Defendant, Larry Delanta Gardner, Jr., was convicted by a unanimous jury of second degree murder, a violation of La. R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Gardner appeals, urging that the trial court erred in denying his motion to suppress statements made to Shreveport Police in violation of his Fifth Amendment rights. For the reasons stated herein, the trial court's denial of the motion to suppress and Gardner's conviction are affirmed.

## FACTS & PROCEDURAL HISTORY

On April 8, 2019, shortly before midnight, the victim, Bruce Randle, was riding his bicycle on Marshall Street in Shreveport, Louisiana. When Randle approached the Red River Brewery at 1200 Marshall Street, a white, four-door sedan drove alongside him, and the driver of the vehicle, alleged to be Larry Gardner, fired two gunshots from the driver's side window. At least one of the shots fired resulted in Randle's death. After Randle fell to the ground, the white vehicle continued driving on Marshall Street before parking at a nearby nightclub.

Shortly after the incident occurred, as Branderick Austin was driving his vehicle down Marshall Street, he saw the victim's body lying on the street. Austin turned around and positioned his vehicle so as to prevent traffic from hitting the body. He then called 911 and waited for officers to arrive on the scene. As Austin waited for responding officers, Gardner returned to the scene in the white, four-door sedan. Austin observed

Gardner approach the victim and use a cellphone light to look at the victim and his injuries.

When Shreveport Police officers arrived at the scene, they separated Gardner and Austin and eventually transported them to the police station for witness interviews. Neither Gardner nor Austin was under arrest so the officers did not administer *Miranda* warnings to either individual. One officer who remained on the scene to collect evidence recorded in his report the two vehicles located on the scene and documented the license plate numbers. The officer also noted that the vehicles belonged to Gardner and Austin.

Once Gardner and Austin arrived at the station, officers interviewed both of them. Detective Jeremy Blanchard conducted Gardner's interview, during which Gardner revealed he was driving back to the Eldorado Casino when he observed the victim lying in the road. He recounted to Det. Blanchard that he did not get near the victim and denied using a cellphone flashlight to see the victim's injuries. After the interview, Det. Blanchard noted the inconsistencies in Austin's and Gardner's stories. Despite those inconsistencies, Det. Blanchard released Gardner as he was not considered a suspect. A patrol officer drove Gardner back to his vehicle when the interview concluded.

The following day, April 9, 2019, Det. Blanchard canvassed the Marshall Street area to obtain security camera footage from nearby businesses as well as other evidence potentially located near the crime scene. When Det. Blanchard reviewed the footage recovered from Red River Brewery and a Caddo Commissioner's office, the footage revealed Gardner's vehicle, a white, four-door sedan, to be the one involved in the

2

shooting. On April 10, 2019, members from the U.S. Marshal's Violent Offender Task Force arrested Gardner. Officers executed a search of Gardner's residence and recovered a .38 Special Smith and Wesson gun and three casings. Shreveport Police linked a bullet recovered from the victim's body to the gun recovered at Gardner's home.

Once they had him in custody, Shreveport Police read Gardner his *Miranda* rights. Gardner then signed a *Miranda* waiver form, wherein he waived his right to remain silent and to have a lawyer present at questioning. Gardner initially gave the same version of events he related during the witness interview, but upon further questioning, Gardner confessed to killing the victim. Gardner stated he shot the victim because the victim and another individual had snatched Gardner's bag from his car when the victim had attempted to buy drugs from Gardner.

On July 23, 2019, a Caddo Parish Grand Jury indicted Gardner for second degree murder and possession of a firearm by a convicted felon. Gardner filed a motion to suppress on June 8, 2020, and alleged that the statements made to Det. Blanchard in Gardner's first and second interviews were made in violation of his Fifth Amendment rights. On October 7, 2020, the court held a hearing on the motion to suppress.

At the hearing, Det. Blanchard testified about the two instances where he questioned Gardner. Det. Blanchard stated he informed Gardner of his *Miranda* rights when he questioned Gardner after his arrest. He explained Gardner signed the *Miranda* form and waived his rights. However, Det. Blanchard stated no *Miranda* warnings were given when Gardner was initially questioned on the night of the shooting because he was only a witness, not a suspect. At the conclusion of the hearing, the trial court

determined the statements made by Gardner were freely, voluntarily, and intelligently made and given and were admissible at trial.

Following a two-day jury trial, a unanimous jury convicted Gardner of second degree murder and possession of a firearm by a convicted felon. Gardner filed a motion for post-verdict judgment of acquittal as well as a motion for new trial on November 9, 2022. The trial court denied those motions that same day. The trial court sentenced Gardner to the mandatory life imprisonment term without benefit of probation, parole, or suspension of sentence for second degree murder. The court also imposed a sentence of 18 years of imprisonment without benefit of probation, parole, or suspension of sentence with credit for time served for possession of a firearm by a convicted felon. The sentences were ordered to run concurrently. Gardner has appealed.

**DISCUSSION**

In his sole assignment of error, Gardner contends that the trial court erred in denying the motion to suppress statements made in his pre- and post-arrest interviews because Shreveport Police failed to read him his *Miranda* rights before his pre-arrest interview. More specifically, Gardner argues Shreveport Police used an unconstitutional "two-step" strategy when questioning Gardner as a witness and later as a suspect because the pre-*Miranda* interview led Shreveport Police to information which was used in the discovery of evidence linking Gardner to the crime.

In response, the State urges the trial court properly denied Gardner's motion to suppress because Gardner's witness interview was not considered a custodial interrogation when he voluntarily provided his witness

4

statements.  Alternatively, the State suggests that the inevitable discovery exception applies even if Gardner's statements are deemed a violation of *Miranda* because the evidence to arrest Gardner would inevitably have been discovered without the aid of the alleged illegally obtained confession.

Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.  La. R.S. 15:451.  Voluntariness is determined on a case-by-case basis, accounting for the totality of the circumstances.  *State v. Holloway*, 54,523 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1090, *writ denied*, 22-01090 (La. 9/20/22); 346 So. 3d 802; *State v. Garner*, 52,047 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1152, *writ denied*, 18-1290 (La. 2/25/19), 266 So. 3d 288.

La. C. Cr. P. art. 703 provides, in part:

B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.

***

D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.

***

G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.

5

A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.

In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion, but may also consider pertinent evidence given at trial. *State v. Cope*, 48,739 (La. App. 2 Cir. 4/9/14), 137 So. 3d 151, *writ denied*, 14-1008 (La. 12/8/14), 153 So. 3d 440; *State v. White*, 39,681 (La. App. 2 Cir. 5/11/05), 903 So. 2d 580. The admissibility of a confession is a question for the trial court. *State v. Holloway*, *supra*; *State v. Garner*, *supra*; *State v. Holder*, 50,171 (La. App. 2 Cir. 12/9/15), 181 So. 3d 918, *writs denied*, 16-0092 (La. 12/16/16), 211 So. 3d 1166, 16-0056 (La. 12/16/16), 212 So. 3d 1176. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless they are not supported by the evidence. *Id*. Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. *State v. Garner*, *supra*; *State v. Holloway*, *supra*. The testimony of the interviewing police officers alone may be sufficient to prove that the defendant's statement was given freely and voluntarily. *Id.*; *State v. Jordan*, 50,002 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1259, *writ denied*, 15-1703 (La. 10/10/16), 207 So. 3d 408.

The obligation to provide *Miranda* warnings attaches only when a person is questioned by law enforcement after he has been taken "into custody or otherwise deprived of his freedom of action in any significant

6

way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966); *State v. Manning*, 03-1982 (La. 10/19/04), 885 So. 2d 1044. Custody is decided by two distinct inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action. *Stansbury v. California*, 511 U.S. 318, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994); *State v. Manning*, *supra*. As such, *Miranda* warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest. *State v. Manning*, *supra*; *State v. Davis*, 448 So.2d 645 (La. 1984).

The United States Supreme Court determined in *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983), that *Miranda* warnings are not required where a defendant was not placed under arrest and voluntarily went to the police station for questioning. In *Beheler*, the defendant consented to a search of his yard, where police recovered a gun used to kill the victim. 463 U.S. at 1122-23. The defendant voluntarily agreed to accompany the police to the station house, and, once at the station, agreed to talk to police about the victim's murder. The police did not advise the defendant of his *Miranda* rights. *Id*. Five days later, the officers arrested the defendant and read him his *Miranda* rights before the defendant waived those rights and confessed to aiding and abetting in the victim's murder. *Id*. The Supreme Court reasoned that the defendant "was neither taken into custody nor significantly deprived of his freedom of action." *Id*. at 1124.

7

Furthermore, the Court opined that *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Id*. at 1125.

Similarly, the Louisiana Fourth Circuit Court of Appeal determined that a defendant's confession did not violate the rules of *Miranda* even though law enforcement first questioned the defendant as a witness. *State v. Hankton*, 12-0466 (La. App. 4 Cir. 4/30/14), 140 So. 3d 398, *writ denied*, 14-1062 (La. 3/13/15), 161 So. 3d 630. The defendant in *Hankton* reported the victim missing to law enforcement, and when law enforcement learned that the defendant was the last person to have contact with the victim, officers requested an interview with the defendant. *Id*. at 402-03. However, law enforcement did not suspect the defendant to be involved in the victim's death. *Id*. at 402. The defendant rode to the police station in a patrol vehicle and gave officers information about the defendant and the victim's relationship and interactions leading up to discovery of the victim's body. *Id*. at 408-10. Law enforcement questioned the defendant twice before formally reading the defendant her *Miranda* rights, which she then freely and voluntarily waived. *Id*. Before trial, the defendant filed a motion to suppress the statements she made to law enforcement officers, but the trial court denied the motion to suppress. *Id*. at 407.

The Fourth Circuit concluded that the defendant was not "in custody" for purposes of *Miranda* at the time that she made statements to law enforcement because the defendant never stated that she felt restrained in any manner or that she gave the statement under duress. *Id*. at 410. Instead, she readily agreed to talk to the officers and assist with the investigation in any way possible, and the defendant's statements during her interview were

8

not inculpatory or exculpatory thereby requiring the officers to first give the defendant her *Miranda* rights. *Id*. at 410-12. The defendant did not confess to murdering the victim nor did she confess to stabbing the victim. *Id*. None of the statements the defendant made to the police officers implicated her in the death of the victim. *Id*. As a result, the Fourth Circuit determined that the officers were under no obligation to give the defendant *Miranda* rights; therefore, the Fourth Circuit affirmed the trial court's denial of the motion to suppress. *Id*. at 412.

In the present matter, we must first determine whether the *Miranda* obligation attached to Gardner when he voluntary rode with Shreveport Police to the station in order to give his witness interview. An objective assessment of circumstances in the record reveals that Gardner was not formally arrested nor was his freedom restrained to the degree associated with a formal arrest. Like the defendant in *State v. Hankton* who voluntarily rode in a police vehicle to the station for questioning, Gardner accompanied Shreveport Police to the station to give his statements. Similarly, Gardner was not placed in handcuffs, and Det. Blanchard testified at trial that Gardner was not forced to give a statement. While on-the-scene witness interviews are a more preferred method of obtaining these types of statements, nothing in the record suggests that Gardner was not free to leave at any point during his interview with Shreveport Police at the station. Likewise, the law does not preclude questioning in a police station without *Miranda* rights. *See, California v. Beheler*, *supra*. Once the interview concluded, Shreveport Police drove Gardner back to his vehicle. Most notably, Shreveport Police treated the other witness involved in the same

manner as Gardner. Given these facts, Gardner was not involved in a custodial interrogation; therefore, no *Miranda* obligation existed.

Although Gardner suggests that Shreveport Police used Gardner's witness interview to place him in the vehicle involved in the shooting, the record clearly reveals that Shreveport Police would have discovered Gardner's involvement even without his witness statements. A description and the license plate number of Gardner's vehicle was recorded in a report taken from the scene. Similarly, the same report noted the location of surveillance cameras from the surrounding buildings which officers would eventually review and discover that Gardner's vehicle was involved in the shooting. Even though Gardner made no inculpatory or exculpatory statements during his witness interview, Gardner's return to the scene of the crime allowed Shreveport Police to identify his vehicle as the vehicle shown in the security camera footage.

Once Shreveport Police suspected Gardner and arrested him, they properly informed him of his *Miranda* rights before questioning him. Gardner subsequently signed a *Miranda* waiver form and ultimately confessed to shooting the victim. Based on these facts, Shreveport Police did not violate Gardner's Fifth Amendment rights. Consequently, the trial court correctly denied Gardner's motion to suppress.

## CONCLUSION

For the foregoing reasons, the ruling of the trial court denying Gardner's motion to suppress and Gardner's conviction are affirmed.

**AFFIRMED.**

10