WILLIAMS, C.J.
The defendant, Dennis R. Davis, Jr., was charged by bill of information with operating a motor vehicle while intoxicated ("DWI"), fourth offense, in violation of La. R.S. 14:98(D) and 14:98.4. Following a jury trial, the defendant was found guilty as charged. He was sentenced to serve 23 years at hard labor, with two years to be served without the benefit of parole, probation or suspension of sentence. He was also ordered to pay a $ 5,000 fine. Further, during the trial, the defendant was held in contempt of court seven times and was sentenced as follows: two six-month periods of confinement in the parish jail, each running consecutively to the sentence imposed for DWI; 10 days' confinement in the parish jail on each of the five remaining counts, for a total of 50 days, all consecutive *677 to any other sentences the defendant may be facing or serving.
For the following reasons, we affirm the defendant's conviction and sentence for DWI, fourth offense. With regard to the findings of direct contempt, we reverse four findings of contempt, and we vacate the six-month period of confinement and three of the 10-day sentences imposed. The three remaining adjudications of contempt, and the sentences imposed therefor - one six-month sentence and two 10-day sentences - are affirmed.
FACTS
At the trial, the defendant opted to represent himself with the assistance of "standby" counsel. The following testimony was elicited at the trial: on May 15, 2016, Detective Logan McDonald and Corporal Jimmie Minor, of the Shreveport Police Department ("SPD"), were assigned to the radar unit of the traffic division. Det. McDonald was operating a stationary radar unit from the parking lot of a funeral home at the intersection of Jewella Avenue and Hollywood Avenue. Det. McDonald testified that he and Cpl. Minor were parked beside each other and they "clocked" the speed of vehicles as the vehicles traveled over a hill on Jewella Avenue. Det. McDonald also testified that his patrol vehicle was equipped with a Mobile Video System ("MVS"), which captures video and audio, and a "two-piece" radar unit, with a radar antenna in the front and rear of the vehicle.
Det. McDonald further testified as follows: he observed a pickup truck coming over the hill at a high rate of speed; he visually estimated that the vehicle was traveling at approximately 75 miles per hour ("mph") in a 40 mph speed zone; the radar unit confirmed the speed of the vehicle at 75 mph; he activated his lights and pulled out of the parking lot to conduct a traffic stop; both he and the defendant pulled into the parking lot of a gas station located nearby; when he approached the defendant's truck, he detected a strong odor of an alcoholic beverage emitting from the inside of the vehicle; he asked the defendant to exit the truck to verify the source of the odor of alcohol; he detected that the odor was coming from the defendant; he also observed that the defendant was unsteady on his feet, swaying, and his speech was slurred; it took the defendant several minutes to produce his driver's license and proof of insurance; he advised the defendant of his Miranda rights and asked him to perform field sobriety tests; he administered the Horizontal Gaze Nystagmus ("HGN") test and the ABC/Divided Attention test; the defendant performed poorly on the HGN test; he noted nystagmus (jerking activity) in the defendant's eyes; the defendant was unable to follow the pen with his eyes; the defendant performed poorly on the ABC test and was unable to recite the alphabet from A to Z; he observed the defendant "swaying" throughout the tests; the defendant's performance on the field sobriety tests indicated that he was intoxicated; the MVS in his police vehicle was activated at the time of the traffic stop and recorded the encounter;[1] he placed the defendant under arrest and transported him to the police station; when they arrived at the police station, he escorted the defendant to the "DWI interview room," where DWI suspects are usually taken, advised the defendant of his Miranda rights, including his rights in connection with blood alcohol and Breathalyzer testing; the room contains a *678 camera that recorded the interaction between him and the defendant; the defendant refused to undergo additional field sobriety and the Intoxilyzer testing; and he placed the defendant under arrest for DWI, fourth offense.
Corporal Jimmie Minor, who is employed in SPD's traffic division, testified as follows: on the evening of May 15, 2016; he was positioned in the parking lot of a funeral home at the corner of Hollywood and Jewella Avenues; he was "running radar" with Det. McDonald; he assisted Det. McDonald when he executed the traffic stop of the defendant; he exited his patrol unit when he noticed there was a passenger in the defendant's truck; and his only involvement with the defendant was when he moved the defendant's truck after the defendant was placed under arrest.
Sergeant Danny Duddy, a supervisor with the SPD's Crime Scene Investigation Unit, testified at trial as an expert in the field of fingerprint identification and comparison. Sgt. Duddy testified that he compared fingerprints from three April 21, 2014 convictions (Caddo Parish District Court docket numbers 311200, 311388, and 321995), for DWI first offense, of a defendant named Dennis R. Davis, Jr., with fingerprints obtained from the defendant in the courtroom. Sgt. Duddy concluded that the defendant was the same person convicted in the three prior offenses in 2014.[2] He also testified that each conviction reflected in the state's exhibits was within ten years of May 15, 2016.
The defendant was the only witness to testify for the defense. He testified as follows: he was not drinking on the night of May 15, 2016; he had not consumed alcohol in the 48 hours prior to being stopped by the police officers; he did not refuse the sobriety tests offered by Det. McDonald; he did not exhibit signs of intoxication when he was stopped; his eyes were not glossy, his balance was not unsteady, his breath did not smell like alcohol, and he did not stagger or fall during the traffic stop; and he was not traveling at 75 mph when he was stopped.
During the defendant's testimony, he introduced into evidence an amended bill of information for Caddo Parish District Court docket number 32214, which charged him with DWI, second offense on May 5, 2016.
After deliberating, the jury found the defendant guilty as charged of DWI, fourth offense. He was sentenced to serve 23 years in prison at hard labor, two of those years to be served without the benefit of parole, probation or suspension of sentence. He was also ordered to pay a $ 5,000 fine. Additionally, during the trial, the defendant was held in contempt of court seven times and was sentenced as follows: two six-month confinements in the parish jail, each running consecutively to the other sentences imposed; 10 days' confinement in the parish jail on each of the remaining five counts, for a total of 50 days, all to run consecutive to "any other sentence the defendant may be facing or *679 serving." Subsequently, the trial court denied the defendant's pro se motion to reconsider sentence.
The defendant appeals.
DISCUSSION
The defendant contends the evidence was insufficient to support his conviction for DWI, fourth offense. He argues as follows: the state failed to produce any evidence to show his blood alcohol level; the state relied on circumstantial evidence and "innocuous observations" to prove that he was intoxicated; his alleged swaying and slurred speech could have been caused by another reason, such as standing on his feet all day while wearing boots; Det. McDonald had no baseline to observe how the defendant normally reacted after working all day; the perceived redness in his eyes could have been caused by working all day in the elements; the police officers "allegedly" stopped him for speeding, which is not an indication of intoxication; there was no testimony that he was driving erratically or swerving; the odor of alcohol, alone, does not prove intoxication; Det. McDonald's testimony that he had "odor on the breath" could not be verified by the jury because the jury could not smell the odor just by viewing the videotape; and the state did not exclude every reasonable hypothesis of innocence.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Ward , 50,872 (La. App. 2 Cir. 11/16/16), 209 So.3d 228, writ denied , 2017-0164 (La. 9/22/17), 227 So.3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Ward , supra ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson , supra .
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Ward , supra . A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Ward , supra ; State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 2009-0725 (La. 12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Ward , supra ;
*680 State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 2009-0372 (La. 11/6/09), 21 So.3d 299.
To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. La. R.S. 15:438 ; State v. Barakat , 38,419 (La. App. 2 Cir. 6/23/04), 877 So.2d 223. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd , 40,480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied , 2006-1083 (La. 11/9/06), 941 So.2d 35.
At the time of the defendant's arrest, La. R.S. 14:98 provided, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle * * * when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred centimeters of blood[.]
* * *
In the instant case, the defendant refused to submit to a blood alcohol concentration test. Thus, in order to support the defendant's conviction of DWI, the prosecution must prove that (1) the defendant was operating a vehicle and (2) he was under the influence of alcoholic beverages while doing so. La. R.S. 14:98(A)(1)(a) ; State v. Pickard , 40,422 (La. App. 2 Cir. 12/14/05), 918 So.2d 485 ; State v. Minnifield , 31,527 (La. App. 2 Cir. 1/20/99), 727 So.2d 1207, writ denied , 99-0516 (La. 6/18/99), 745 So.2d 19.
On appeal, the defendant does not dispute the evidence presented to prove his prior convictions for DWI. Therefore, we must only determine whether the evidence was sufficient to support the DWI conviction in the instant matter. Further, since the defendant refused to undergo a breath or blood alcohol test, his DWI conviction rests solely upon the observations of the witnesses.
It is well settled that behavioral manifestations, independent of any scientific tests, are sufficient to support a conviction of DWI. State v. Henix , 46,396 (La. App. 2 Cir. 8/10/11), 73 So.3d 952 ; State v. Gage , 42,279 (La. App. 2 Cir. 8/29/07), 965 So.2d 592, writ denied , 2007-1910 (La. 2/22/08), 976 So.2d 1283 ; State v. Harper , 40,321 (La. App. 2 Cir. 12/14/05), 916 So.2d 1252. It is not necessary that the conviction be based upon a breath or blood alcohol test. The observations of an arresting officer may be sufficient to establish guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen , 440 So.2d 1330 (La. 1983) ; State v. Henix , supra . Furthermore, a defendant's refusal to submit to a breath test is admissible to support a conviction for DWI; the weight of that evidence is left to the trier of fact. La. R.S. 32:666(A) ; State v. Dugas , 252 La. 345, 211 So.2d 285 (1968), cert denied , 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969) ; State v. Henix , supra .
Herein, during the defendant's trial, Det. McDonald described the defendant's appearance and behavior on the day of the defendant's arrest. He testified that the defendant's behavior was consistent with a person who is intoxicated. According to Det. McDonald, the defendant emitted a "strong odor" of alcohol, and his speech was slurred. Further, the officer testified with regard to administering field sobriety tests to the defendant. According to Det. McDonald, the defendant was unsteady on his feet, swaying, and he failed the field sobriety tests. Based on his observations, *681 Det. McDonald opined that the defendant was intoxicated.
Further, the video and audio recordings introduced into evidence confirmed Det. McDonald's testimony. A review of those recordings reveals that the defendant was unable to recite the alphabet while he was on the scene of the arrest and that he was swaying while attempting to perform the field sobriety tests.
It is apparent from the verdict that the jury found the testimony of Det. McDonald to be credible. In addition, the jury was able to view the video evidence of the defendant's arrest. After reviewing the evidence in a light most favorable to the prosecution, we find that the record supports the jury's finding of guilt. Further, the evidence of record excluded every reasonable hypothesis of innocence. The jury had sufficient evidence to conclude that the defendant was driving while intoxicated. This assignment lacks merit.
The defendant also contends the trial court erred in denying his motion for a new trial. He argues that he was entitled to a new trial because the verdict rendered was "contrary to the law and/or the evidence in that the prosecution failed to prove beyond a reasonable doubt that the defendant committed the crime." La. C. Cr. P. art. 851(B)(1). Further, the defendant argues that the trial court used the "sufficiency of the evidence" standard, as set forth in Jackson v. Virginia , supra , to deny his motion for a new trial, rather than reviewing the matter as the "thirteenth juror," as set forth in Tibbs v. Florida , 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). According to the defendant, the trial court was required to sit as a thirteenth juror and analyze the case from a juror's perspective, which gives the defendant the presumption of innocence and the state the burden of proof.
La. C. Cr. P. art. 851 provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
* * *
B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence.
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.
La. C. Cr. P. art. 858 provides:
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.
Trial courts are to use the "thirteenth juror" standard when the ground asserted in the motion for new trial is that the verdict is contrary to the law and the evidence, or the court is of the opinion that the ends of justice would best be served by granting a new trial. State v. Watts , 2000-0602 (La. 1/14/03), 835 So.2d 441. In ruling on a motion for new trial pursuant to La. C. Cr. P. art. 851(1), the trial court can only consider the weight of the evidence. The trial court then makes a factual review of the evidence as a thirteenth juror. State v. Steward , 95-1693 (La. App. 1 Cir. 9/27/96), 681 So.2d 1007.[3]
*682 In State v. Hampton , 98-0331 (La. 4/23/99), 750 So.2d 867, the Louisiana Supreme Court stated:
A motion for new trial presents only the issue of the weight of the evidence, see Tibbs v. Florida , 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) * * * and is examined under the so-called thirteenth juror standard, under which the judge reweighs the evidence. Id. ; State v. Voorhies , 590 So.2d 776, 777 (La.App. 3rd Cir.1991). The question of the sufficiency is properly raised by a motion for post-verdict judgment of acquittal. La.Code Crim. Proc. art. 821 ; State v. Demery , 28,396 (La.App.2d Cir.8/21/96), 679 So.2d 518, 522. But see La.Code Crim. Proc. art. 851 cmt. d ("[i]t is the duty of the trial judge to pass upon the sufficiency of the evidence" once ground (1) is raised under art. 851 ).[4 ]
We treat the constitutional issue of sufficiency because the denial of a motion for new trial based upon La.Code Crim. Proc. art. 851(1) is not subject to review on appeal. State v. Bartley , 329 So.2d 431, 433 (La. 1976).[5 ]
Id. , at 879-80 ; (footnote added).
Further, in State v. Gaines , 633 So.2d 293 (La. App. 1 Cir. 11/24/93), the Court stated:
[W]e find it inappropriate to remand for a reconsideration of the motion for new trial. First, when the trial court issued its ruling, defendant did not object on the ground that the court applied the wrong standard. Thus, procedurally he is barred from advancing this argument on appeal. See LSA-C.Cr.P. art. 841. Moreover, the record does not support defendant's claim that the court applied the wrong standard. The court's comments were brief and do not indicate that the court applied the standards of LSA-C.Cr.P. article 821 in ruling on the motion for new trial.
In the instant case, the trial court ruled on the defendant's motions for a new trial and post-verdict judgment of acquittal simultaneously. In doing so, the court stated:
Pursuant to La. C. Cr. P. art. 851(B)(2), the motion for a new trial is denied. Under La. C. Cr. P. art. 851(B)(1), the court does believe that there was sufficient evidence for a reasonable trier of fact under Jackson v. Virginia to find that the defendant was guilty as charged. And under a motion for post-verdict judgment of acquittal, under the Jackson v. Virginia analysis, the court defers to the jury's assessment of the evidence based on the DWI video that they had the opportunity to review and *683 view repeatedly and the predicate offense evidence that they saw and heard in court. So I will deny both motions by defense counsel at this time for the reasons orally stated.
Our review of the record reveals that the trial court summarily denied the defendant's motion for new trial without providing reasons. With regard to the defendant's motion for post-verdict judgment of acquittal, the court correctly applied the Jackson v. Virginia , supra , standard of review. The court also addressed the arguments the defendant urged in his motion for new trial and stated that it had reviewed the evidence, including the evidence and arguments the defendant raised during the course of the trial. We find that the trial court did not err in denying the defendant's motions. This assignment lacks merit.
The defendant also contends his sentence was constitutionally excessive. He argues that the prior felonies he committed were non-violent offenses, all of which involved some form of substance abuse. Further, the defendant maintains that there was no victim to his crime and his driving while intoxicated did not cause harm to others.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the trial record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that the trial court adequately considered the guidelines of La. C. Cr. P. art. 894.1. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. Weston , 52,312 (La. App. 2 Cir. 11/14/18), 260 So.3d 722, writ denied, 2018-2066 (La. 4/22/19), 268 So.3d 299, 2019 WL 1950664 ; State v. Jackson , 51,575 (La. App. 2 Cir. 9/27/17), 244 So.3d 764.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno , 384 So.2d 355 (La. 1980) ; State v. Weston, supra; State v. Jackson , supra . A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Weston, supra.
A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Weston, supra; State v. Jackson , supra . The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case. State v. Weston, supra; State v. Jackson , supra . Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. State v. Weston, supra; State v. King , 48,335 (La. App. 2 Cir. 8/7/13), 122 So.3d 1042, writ denied , 2013-2017 (La. 5/2/14), 138 So.3d 1238.
At the time the defendant committed the instant offense, La. R.S. 14:98.4 provided, in relevant part:
A. (1) Except as modified by Subparagraphs (a) and (b) of this Paragraph, or as provided by Subsections B and C of this Section, on a conviction of a fourth or subsequent offense violation of R.S. 14:98, regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be fined five thousand dollars and imprisoned, with or *684 without hard labor, for not less than ten years nor more than thirty years. Two years of the sentence of imprisonment shall be imposed without benefit of parole, probation, or suspension of sentence. Except in compliance with R.S. 14:98.5(B)(1), the mandatory minimum sentence cannot be served on home incarceration.
In State v. Lewis , 45,057 (La. App. 2 Cir. 1/27/10), 31 So.3d 1144, the defendant pled guilty to DWI, fourth offense, and was sentenced to serve 20 years in prison. The defendant appealed the sentence, arguing that the sentence was excessive. This court rejected the argument, stating:
[T]he trial court reviewed the presentence investigation ("PSI") report in great detail, and clearly considered many factors embodied within La. C. Cr. P. art. 894.1 including: the defendant's employment history; prior convictions; inability to respond to rehabilitation; and the seriousness of driving while intoxicated. The trial court astutely noted that the defendant repeatedly endangered the life of himself and others while driving in an impaired state.
Id. at 1147.
Similarly, in State v. Swayzer , 43,350 (La. App. 2 Cir. 8/13/08), 989 So.2d 267, writ denied , 2008-2697 (La. 9/18/09), 17 So.3d 388, the defendant claimed on appeal that his sentence of 20 years in prison for DWI, fourth offense, was excessive. In determining the defendant's sentence, the trial court noted that he had three previous DWI convictions over the span of a few years and had also pled guilty to possession of marijuana. The trial court concluded that the defendant posed a danger to other drivers and that it was unlikely he would change his conduct given his past behavior. This Court affirmed the defendant's sentence on appeal, finding that the trial court had adequately expressed its reasons for imposing the sentence and the sentence did not shock the sense of justice. Id. ; see also , State v. Hotard , 44,431 (La. App. 2 Cir. 6/24/09), 17 So.3d 64 ; State v. Wiltcher , 41,981 (La. App. 2 Cir. 5/9/07), 956 So.2d 769.
In the instant case, prior to imposing the defendant's sentence, the trial court meticulously reviewed each factor set forth in La. C. Cr. P. art. 894.1. The court noted that it had reviewed the defendant's presentence investigation report, particularly observing the defendant's lengthy and detailed criminal history, which included multiple prior arrests for DWI, five of which had occurred within the last five years.[6] The court further stated that the defendant's criminal history indicated that he possessed a disregard for the consequences that his criminal behavior may present for others and a "disregard for any interest in addressing what may be going on at the root of the problem." Additionally, the court stated, "[T]he Court sympathizes with people with a drinking problem; it does not sympathize with people with a drinking and driving problem[.]"
Further, the court noted the following aggravating factors: the defendant created a risk of death or great bodily harm to more than one person by driving, while *685 intoxicated, at a speed of more than 35 mph over the speed limit; and the defendant utilized a dangerous weapon by operating a motor vehicle at a high rate of speed while "profoundly impaired." Further, prior to imposing the sentence, the court stated:
The Court does believe that [the defendant] has shown an absolute lack of any remorse or notion that he bears any responsibility whatsoever for operating a motor vehicle while intoxicated so many times, in such a short period of time. * * * [T]he Court believes that the lack of remorse coupled with the short time period in which all of these DWI convictions were amassed - 2012, 2014, 2014, 2015, 2016 - shows a pattern of indifference towards the consequences of drunk driving.
Additionally, the court stated that the defendant's numerous DWI convictions "suggests to the Court that nothing short of incarceration would keep [the defendant] from driving, whether he's licensed, allowed to do so, ordered not to do so, or not."
With regard to mitigating factors, the court noted that the defendant's criminal conduct did not cause actual harm to others. The court also noted that the defendant's incarceration would present a hardship to his family and his business. However, the court observed that there was no evidence in the record that the defendant had voluntarily participated in any substance abuse program.
After reviewing the record in its entirety, it is clear that the trial court considered the factors embodied in La. C. Cr. P. art. 894.1. At the time the defendant committed the offense, the maximum sentence for a fourth offense DWI was 30 years in prison and a $ 5,000 fine. La. R.S. 14:98.4. The defendant's sentence of 23 years falls within that statutory sentencing range. Furthermore, as the trial court noted, the defendant has numerous arrests for DWI and has committed multiple traffic violations while operating a motor vehicle while intoxicated. The defendant has clearly demonstrated that he has a disregard for the law. His prior convictions make evident the likelihood that he would continue to endanger the lives of others by driving while intoxicated. We find that the sentence imposed does not shock the sense of justice. The sentence is not constitutionally excessive. This assignment lacks merit.
The defendant further contends the trial court violated his right to due process by holding him in contempt "numerous times throughout the trial and subsequent proceedings" and subsequently sentencing him for the offenses. He argues that La. C. Cr. P. art. 22 requires that a person accused of contemptuous conduct be afforded the due process to be heard and the right to defend himself.
La. C. Cr. P. art. 21 provides:
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
* * *
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(6) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business *686 of the court or to impair its dignity or respect for its authority;
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court.
La. C. Cr. P. art. 22 provides as follows:
A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.
Direct contempt is decided summarily and without trial. La. C. Cr. P. art. 22 ; State v. Watson , 465 So.2d 685 (La. 1985) ; State v. Woolridge , 95-971 (La. App. 5 Cir. 2/27/96), 670 So.2d 1332, writ denied , 96-3043 (La. 10/3/97), 701 So.2d 192. The summary procedure allows immediate vindication of the court's authority. State v. Watson, supra ; State v. Woolridge, supra .
In In re Oliver , 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the United States Supreme Court discussed the due process limitations on summary contempt procedures as follows:
Except for a narrowly limited category of contempts, due process of law as explained in the Cooke [v. United States , 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925) ] case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority * * * before the public." If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the Cooke case, that the accused be accorded notice and a fair hearing as above set out.
In re Oliver , 333 U.S. at 275-276, 68 S.Ct. at 508-509, 92 L.Ed. at 695.
There is little doubt that "the fair and efficient administration of justice requires that respect for the dignity of the courts be maintained and that willful disobedience or deliberate defiance of the court's authority be punished." State v. Bullock , 576 So.2d 453 (La. 1991) ; In re Milkovich , 493 So.2d 1186 (La. 1986). However, the power to jail for contempt is given to the judge "on the assumption that it will be judiciously and sparingly employed." State v. Bullock , supra .
A contempt proceeding is considered a civil matter if its purpose is to force compliance with a court order, but is treated as a criminal matter if its purpose is to punish disobedience of a court order. State in the Interest of R.J.S. , 493 So.2d 1199 (La. 1986). In a criminal contempt proceeding, the object is to punish relator for contemptuous behavior in the presence of the court. In re Milkovich , supra , citing State v. Austin , 374 So.2d 1252 (La. 1979), *687 and W. LeFave & A. Scott, Criminal Law § 7 (1972); R. Perkins, Criminal Law 532 (1969). Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to the basic constitutional protections such as the presumption of innocence, the right to proof of guilt beyond a reasonable doubt, and the right not to be compelled to testify against himself. Bloom v. Illinois , 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) ; In re Milkovich , supra .
The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a defendant in a criminal proceeding against conviction of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Milkovich , supra . On appellate review of a criminal conviction, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime of which the defendant was convicted was proved beyond a reasonable doubt. Jackson v. Virginia , supra ; State v. Captville , 448 So.2d 676 (La. 1984).
In State v. Williams , 97-1135 (La. App. 5 Cir. 5/27/98), 714 So.2d 258, the trial court found the defendant in contempt without affording him an opportunity to be heard orally by way of defense or mitigation. In addition, the court failed to render an order reciting the facts constituting the contempt and adjudging defendant guilty thereof but specified the punishment imposed. Accordingly, the appellate court reversed the judgment of contempt and vacated the sentence the trial court had imposed for contempt.
In State v. Woodward , 2009-2498 (La. 12/10/10), 50 So.3d 148, the Louisiana Supreme Court reversed a judgment of contempt and vacated the sentence imposed therefor, stating:
The record shows that the contempt adjudication did not comply with La.C.Cr.P. art. 22, which provides: "A person who has committed a direct contempt of court may be found guilty and punished therefor by the court without any trial, after affording him an opportunity to be heard orally by way of defense or mitigation." See also In re Judge Sassone , 2007-0651 (La. 6/29/07), 959 So.2d 859 ; State v. Williams , 97-1135 (La.App. 5th Cir. 5/27/98), 714 So.2d 258. Here, relator was not afforded an opportunity to be heard orally by way of defense or mitigation.
As state above, in the instant case, the defendant opted to represent himself with the assistance of standby counsel. During the course of the trial and sentencing, the trial court held the defendant in contempt on seven separate occasions. The contempt adjudications were as follows:
First Contempt Adjudication
During Sgt. Duddy's testimony, the defendant objected to the admission of evidence of his prior DWI convictions. When asked about the grounds for his objection, the defendant began to speak about other matters after the trial court had repeatedly admonished that he could not testify at that time. Thereafter, the trial court excused the jury, and the following colloquy took place:
COURT: Mr. Davis, I find you in contempt of court. I have ordered you not to testify. You have the right to testify and be subject to cross-examination; but you do not have the right, in the form of question or argument, to testify about events outside of the courtroom. Do you have anything in mitigation of your contempt?
*688 DEFENDANT: I do because the state is offering these frivolous papers based on a time when I was a free man --
COURT: Do you have anything to offer in mitigation of your contempt? Have I not been clear that you cannot testify?
DEFENDANT: Okay. I have not testified. I'm merely just stating that --
COURT: Stating facts about things that happened before today, correct?
DEFENDANT: The fact that she is trying to admit to this man that is a DWI -- I mean, is an identification expert, not a DWI. I'm sorry, Your Honor. This is my life on the line, and I'm going to speak for myself, whether you like it or not.
COURT: Well, I find you in contempt. I will determine sentencing at the conclusion of this trial.
We find that the trial court did not err with regard to the first contempt adjudication. The court informed the defendant that he had the right to testify, but he could not testify during arguments regarding events outside of the courtroom. The court then afforded the defendant the opportunity to be heard by way of mitigation. Accordingly, we find that the trial court substantially complied with the provisions set forth in La. C. Cr. P. art. 22 with regard to the first finding of direct contempt. We affirm the contempt adjudication and the 10-day sentence imposed.
Second Contempt Adjudication
The trial court held the defendant in contempt for the second time by stating, "[T]he Court would also potentially consider that to be an additional contempt of court, because of the number of times I've had to admonish you about holding up documents."
We find that the second contempt adjudication did not comply with La. C. Cr. P. art 22. A statement that the court would "potentially consider" the defendant to be in contempt of court does not constitute a direct order of contempt. Further, the court did not afford the defendant "an opportunity to be heard orally by way of defense or mitigation." See State v. Woodard , supra . We hereby reverse the second finding of contempt, and we vacate the 10-day sentence imposed.
Third and Fourth Contempt Adjudications
The trial court held the defendant in contempt again when the defendant attempted to introduce a series of documents into evidence.[7] The state objected to the admission of the documents, stating that the state had not been provided with many of the documents during discovery. It also argued that the documents were not relevant and the defendant had not established a proper foundation for the introduction of the documents. The trial court explained the rules of evidence and criminal procedure to the defendant and asked the defendant why the documents had not been made available to the state during discovery. The defendant replied, "I don't care what you do, man. F*ck it. You're going to deny it anyways. Go on. F*ck it. Go on deny it." The court held the defendant in contempt, stating:
All right. He's just used profanity. I want the record to show that. Sir, I am trying to treat you with all the dignity to which you are entitled, but you are showing an obstreperous refusal to comply with the law. You have refused to comply with discovery, under Article 724 and 725, despite my repeated warnings that you don't know the law and that it could cause problems in your efforts to *689 represent yourself. And despite my patience in providing you with standby counsel to answer your questions and try to help you through that, every time I ask you a question or talk to you about it, you tell me that you know better and you refuse to answer my question.
* * *
And by the way, you are in contempt of court for your outburst, but we'll deal with that later.
* * *
Within minutes of the third adjudication of contempt, the defendant continued to argue with the trial court and repeatedly interrupted the court during the court's instructions. The court again attempted to explain trial procedure to the defendant. The colloquy is as follows:
DEFENDANT: The court should have made availability to Mr. Prudhomme and told him to -
COURT: No sir, you fired Mr. Prudhomme. You said you had it.
DEFENDANT: You wouldn't let me fire him. Remember?
COURT: Sir, he's your standby counsel. He's not your lawyer.
DEFENDANT: Well, I mean, I tried to stop him, but you said I couldn't. Either I can or I can't. I mean, you can't - what's good for the goose is good for the gander. You can't go both ways just because you are a judge.
COURT: Sir, I have made it abundantly clear that you are your own lawyer. I have responded to 50 motions - sir, you are interrupting me again. Sir, you don't understand procedure. I have tried to explain to you that that was why I think it's a bad idea to represent yourself. If you have not made these items available to the state, then they are not allowed for trial. It seems that none of them are relevant or admissible anyway. The motions filed with this court are not admissible at the trial. I'm sorry?
DEFENDANT: I was speaking to Mr. Swift.
COURT: The motions filed before this court are not admissible as exhibits in the trial. * * * I'm not singling you out for negative treatment, sir. You are trying to offer things -
DEFENDANT: I won't let you.
COURT: -- that are not - sir, you've interrupted me again. You are in contempt again. And if you do so again in any violation, then at this point, under Faretta [v.] California ,[8 ] under Illinois [v.] Allen ,[9 ] I'm going to find that you are being so difficult and obstreperous, that you are making it impossible for the trial to proceed with you representing yourself.
* * *
So you have a choice. You can follow the rulings of this court; and if I'm wrong, a court of appeal will correct me. But if you will follow my rulings and complete this trial, or you will not and [standby counsel] will complete this trial[.] * * * So, Mr. Davis, are you going to take the witness stand in your own defense?
DEFENDANT: Yes, sir I am.
COURT: Are you going to comply with the court's rulings if I order you to move on from a subject matter?
DEFENDANT: Full compliance, sir.
COURT: All right. Are you going to have any more outbursts of profanity or visible displays of frustration when you don't like the court's rulings?
*690 DEFENDANT: No, sir, Your Honor. I want to apologize to the court for the discipline that I have set forth today. That is not my behavior[.]
We find that the trial court did not err with regard to the third and fourth contempt adjudications. The court attempted to explain to the defendant the rules of evidence and trial procedure. The court then afforded the defendant the opportunity to be heard by way of mitigation. Accordingly, we find that the trial court substantially complied with the provisions set forth in La. C. Cr. P. art. 22 with regard to the third and fourth findings of direct contempt. Consequently, we affirm the third and fourth adjudications of contempt and the six-month and 10-day sentences imposed.
Fifth Contempt Adjudication
During the defendant's cross-examination testimony, the state began to question him with regard to certain aspects of his business operations, i.e. , his ability to review documents, write checks, paying employees, etc. The defendant objected to the line of questioning. When the state attempted to offer an explanation for the questions, the defendant interrupted the assistant district attorney. The trial court excused the jury and admonished the defendant with regard to his repeated interruptions of the court and the assistant district attorney. When the defendant interrupted the court during its remarks, the court held him in contempt, stating:
I find you in contempt of court for violating my repeated orders for you to not interrupt; and I will conduct sentencing at the conclusion of the trial on your fourth contempt citation.
The trial court did not provide the defendant an opportunity to be heard or the opportunity to offer evidence in defense or mitigation of his actions. Consequently, we reverse the fifth adjudication of contempt, and we hereby vacate the 10-day sentence imposed.
Sixth Adjudication of Contempt
Following the defendant's conviction, a hearing was conducted on post-trial motions. During the hearing, the defendant objected to the admission of the bills of information from his prior DWI cases, stating that the bills of information were "counterfeit," and "frivolous and phony." The trial court admonished the defendant regarding "arguing the facts," rather than stating a factual basis for his allegations. The defendant became argumentative and interrupted the trial court during its remarks. The trial court held the defendant in contempt, stating, "Mr. Davis, you're interrupting me again. Now you're in contempt again."
The trial court did not provide the defendant an opportunity to be heard or the opportunity to offer evidence in defense or mitigation of his actions. Consequently, we reverse the sixth adjudication of contempt, and we vacate the 10-day sentence imposed.
Seventh Adjudication of Contempt
During the sentencing hearing, after the trial court imposed the defendant's 23-year sentence, the following colloquy occurred:
DAVIS: Make it 30, Your Honor. Give me 30 years.
COURT: I'll give you an additional six months for contempt for that.
DAVIS: Thank you, Judge. Thank you for the six months.
COURT: I'm not going to get into a bidding war with you, sir. You are in contempt of court. Six months parish jail, consecutive to the sentence that I just imposed.
*691 The trial court did not provide the defendant with an opportunity to be heard with regard to the seventh adjudication of contempt. The court failed to afford the defendant an opportunity to be heard in defense or mitigation. Consequently, we hereby reverse the seventh adjudication of contempt and vacate the six-month sentence imposed.
Pro Se Assignments of Error[10]
In his pro se appellate brief, the defendant asserts claims against appellate counsel before stating his assignments of error. The defendant's complaints are entitled "Ineffective asst. counsel c/o: claim on appellant attorney." The defendant's specific claims of "incompetence" and ineffective appellate counsel are as follows: (1) counsel's decision to file a motion to waive oral argument was contrary to the defendant's best interests; (2) counsel "deliberately refused to" raise assignments of errors with regard to certain adverse trial and pre-trial rulings; (3) counsel failed to challenge the DWI, fourth offense charge and 23-year sentence with the exculpatory evidence; and (4) counsel failed to raise the issue that the defendant filed a civil lawsuit against the Caddo Parish sheriff and jail administrator stemming from the fact that he was detained five and one-half months prior to his initial court appearance.
The Sixth Amendment to the United States Constitution and Article I, Section 13, of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. According to Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffectiveness claim must show (1) that defense counsel's performance was deficient and (2) that the deficiency prejudiced the defendant. The defendant has the burden of showing "that there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland , 466 U.S. at 694, 104 S.Ct. at 2068 ; State v. Joseph , 2016-191 (La. App. 5 Cir. 12/7/16), 205 So.3d 1013, writ denied , 2017-0299 (La. 11/17/17), 230 So.3d 216.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court rather than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. State v. Nixon , 51,319 (La. App. 2 Cir. 5/19/17), 222 So.3d 123, writ denied , 2017-0966 (La. 4/27/18), 239 So.3d 836.
When the claim of ineffective assistance of appellate counsel is based on a failure to raise an issue on appeal, the "prejudice prong" of the Strickland test requires the petitioner to establish that the appellate court would have granted relief had the issue been raised. State v. Cambrice , 2015-2362 (La. 10/17/16), 202 So.3d 482, 487, citing United States v. Phillips , 210 F.3d 345 (5th Cir. 2000).
In reviewing claims of ineffective assistance of counsel on direct appeal, appellate counsel "need not advance every argument, regardless of merit, urged by the defendant." Evitts v. Lucey , 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker *692 arguments on appeal and focusing on one central issue if possible, and at most a few key issues." Jones v. Barnes , 463 U.S. 745, 751-2, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). This is true even where the weaker arguments have merit. Id.
Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Significantly, effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. State v. Cambrice , supra ; State v. Soler , 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied , 94-0475 (La. 4/4/94), 637 So.2d 450 and 94-1361 (La. 11/4/94), 644 So.2d 1055. General statements and conclusory allegations are insufficient to prove a claim of ineffective assistance of counsel. State v. Bodine , 52,205 (La. App. 2 Cir. 9/26/18), 257 So.3d 249, writ denied , 2018-1756 (La. 3/25/19), 267 So.3d 597.
The record reveals that appellate counsel lodged a well-written appellate brief, zealously advocating for the best interest of his client. We give great deference to counsel's strategy, and we acknowledge his ability to "winnow out" weaker arguments urged by the defendant. Further, we find that the defendant, through his general statements and conclusory allegations, has failed to establish that he would have prevailed on appeal had other issues been raised. This assignment lacks merit.
The defendant also makes claims of false imprisonment and kidnapping. He argues that he was deprived of his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when he was unlawfully detained, falsely imprisoned, and denied the right to bail.
Our review of this record reveals that the defendant filed approximately 50 pretrial pro se motions. On March 16, 2017, the trial court denied the motion with regard to false imprisonment and denial of bail, stating:
Defendant argues that he is being held without cause and without bond. A Preliminary Exam was held on February 2, 2017 wherein this court found probable cause. A review of Defendant's bonds was conducted in open court on February 23, 2017 where it was determined that bond had been set on all charges in this docket number.
Therefore, this motion is DENIED.
* * *
We note that the defendant has presented no evidence that he was kidnapped, falsely imprisoned, or denied bail. We have reviewed this record in its entirety, and we find that the defendant was placed under lawful arrest for DWI, fourth offense, and was transported to the Caddo Parish jail. Further, a bond was set, and the defendant failed to post bail. Thereafter, the trial court conducted a hearing and determined that probable cause existed to charge the defendant with the aforementioned offense. This assignment lacks merit.
The defendant's next argument appears to stem from the trial court's denial of his motion to suppress. He contends the police officers lacked grounds to conduct the traffic stop which led to his arrest. He argues that the SPD has a history of stopping African American citizens who drive expensive vehicles. According to the defendant, the vehicle he was operating at the time of his arrest was valued at $ 80,000, and was "loaded with tools on the back." Further, the defendant argues that *693 the state did not offer any proof that he was speeding because the reading from the radar detector was not introduced into evidence at trial.
The law with regard to traffic stops is well settled.[11] Police officers are authorized to enforce traffic laws governing the operation of vehicles and pedestrians upon all public highways located within the state of Louisiana. See La. R.S. 32:21 ; State v. Cox , 42,232 (La. App. 2 Cir. 8/22/07), 963 So.2d 1080, writ denied , 2007-1898 (La. 11/16/07), 967 So.2d 526.
In the instant case, Det. McDonald testified that on the day of the defendant's arrest, he was operating a stationary radar unit and his police vehicle was equipped with radar devices. He testified that he observed the defendant's vehicle traveling at a "high rate of speed," and the radar device detected the defendant's speed to be 75 mph in a 40 mph speed zone. The defendant did not present any evidence to demonstrate that the traffic stop was pretextual. This assignment lacks merit.
The defendant also raised the following assignments of error: (1) the state violated his constitutional protection against double jeopardy; (2) the trial court erred in allowing the state to introduce "exhibit of globo" into evidence at trial; (3) the trial court abused its powers in general; and (4) the trial court abused its powers by denying the defendant his right to be tried by a 12-member jury, rather than a six-member jury. However, the defendant failed to make any argument with regard to these assignments of error.
Pursuant to U.R.C.A. Rule 2-12.4, all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assignment of error or issue for review which has not been briefed. A mere statement of an assignment of error in a brief does not constitute the briefing of the assignment. State v. Duffy , 51,734 (La. App. 2 Cir. 1/10/18), 245 So.3d 340 ; State v. Free , 48,260 (La. App. 2 Cir. 11/20/13), 127 So.3d 956, writs denied , *694 2013-2978 (La. 5/30/14), 140 So.3d 1174 and 2014-0039 (La. 9/19/14), 148 So.3d 944.
We note that the defendant's pro se brief merely lists the above additional assignments of error and contains only conclusory allegations. The defendant has failed to provide any factual references, arguments, or legal authority to support his claims. Because defendant failed to properly brief these assignments of error, these issues are considered abandoned.
CONCLUSION
For the reasons set forth herein, we affirm the defendant's conviction and sentence for DWI, fourth offense. We also affirm three of the contempt adjudications and the related sentences as follows: one six-month sentence and two 10-day sentences. We reverse four of the contempt adjudications and vacate the sentences imposed therefor.
DWI CONVICTION AFFIRMED; DWI SENTENCE AFFIRMED; THREE FINDINGS OF CONTEMPT AND RELATED SENTENCES AFFIRMED; FOUR FINDINGS OF CONTEMPT REVERSED AND RELATED SENTENCES VACATED.

The MVS video was introduced into evidence and was played for the jury during the defendant's trial.

During the trial testimony of Sgt. Duddy, the state introduced fingerprint documentation of the defendant's prior DWI arrests. Further, the following documentation was introduced into evidence: the amended bill of information from Caddo Parish District Court docket number 311200, filed April 21, 2014, which charged the defendant with DWI, first offense; the amended bill of information for Caddo Parish District Court docket number 311388, filed April 21, 2014, which charged the defendant with DWI, first offense; and the bill of information for Caddo Parish District Court docket number 321995, filed April 21, 2014, which charged the defendant with DWI, first offense. The court minutes attached to the documents revealed that the defendant pled guilty to all three offenses on April 21, 2014.

In contrast, an appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases, since that determination rests solely within the discretion of the trier of fact. State v. Mitchell , 1999-3342 (La. 10/17/00), 772 So.2d 78 ; State v. Law , 2015-0210 (La. App. 1 Cir. 2/24/16), 189 So.3d 1164, writ denied , 2016-0926 (La. 4/24/17), 220 So.3d 740.

At the time of the decision in State v. Hampton , supra , La. C. Cr. P. art. 851(1) provided, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence[.]
* * *

In State v. Bartley , 329 So.2d 431, 433 (La. 1976), the Court stated:
It is well established in Louisiana that an assignment of error reserved to the denial of a motion for a new trial alleging that the verdict is contrary to the law and the evidence presents nothing for appellate review. State v. Williams , La., 310 So.2d 513 (1975) ; State v. Hollingsworth , La., 292 So.2d 516 (1974) ; State v. Washington , La., 292 So.2d 234 (1975) [ (1974) ].

The record reveals that in 2002, the defendant entered a "no contest" plea to DWI; in 2005, he entered two guilty pleas to DWI, one of which was an "underage DWI"; in 2014, he entered guilty pleas to four separate DWI offenses; in 2015, he pled guilty to DWI, second offense; and in 2016, he pled guilty to DWI, second offense (this plea occurred 10 days before he was arrested for the instant offense). The defendant has also committed other offenses, such as possession of a Schedule II controlled dangerous substance, misdemeanor theft, and domestic abuse.

The documents included business filings with the Louisiana Secretary of State and a federal lawsuit the defendant had filed against the SPD.

422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

Recognizing the defendant's pro se status, this Court has attempted to ascertain the substance of his arguments and treat them as properly raised.

The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. U.S. v. Sharpe , 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) ; U.S. v. Hensley , 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. State v. Prince , 50,548 (La. App. 2 Cir. 4/13/16), 195 So.3d 6 ; State v. Burney , 40,056 (La. App. 2 Cir. 5/23/12), 92 So.3d 1184, writ denied , 2012-1469 (La. 1/11/13), 106 So.3d 548. The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is a two-step formulation: the court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio , 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; State v. Prince , supra ; State v. Pena , 43,321 (La. App. 2 Cir. 7/30/08), 988 So.2d 841.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. U.S. v. Sharpe , supra ; State v. Prince , supra . When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley , 1997-0965 (La. 3/13/98), 708 So.2d 1048. If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal; the standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. State v. Prince , supra ; State v. Lee , 46,742 (La. App. 2 Cir. 12/14/11), 79 So.3d 1278. This objective standard is indifferent to the relatively minor nature of a traffic violation. Id.